[No. 30020. Department Two. April 17, 1947.]

GLADYS E. JACOBS, *Appellant,* v. THE OFFICE OF UNEMPLOY-
MENT COMPENSATION AND PLACEMENT, *Respondent.*[1]

[1]Reported in 179 P. (2d) 707.

*F. W. Loomis,* for appellant.

*The Attorney General* and *Bernard A. Johnson, Assistant,* for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court affirming a decision of the commissioner of unemployment compensation and placement of the state of Washington, which had upheld a prior decision by a departmental appeal tribunal wherein an applicant's claim for benefits under the unemployment compensation act was denied.

At all times here involved, appellant, Gladys E. Jacobs, was a married woman, living with her husband and five children in Junction City, Washington, about five miles from Hoquiam. During World War II, and for a period of approximately two years beginning September 8, 1943,

she was employed as a riveter at the Hoquiam plant of Boeing Aircraft Company. She worked on a day shift and received a wage of $1.10½ an hour. During that same period, her husband was employed as a laborer in a plywood factory in or near Hoquiam, although his particular work shift changed from time to time. By October, 1945, the oldest of the five children had attained the age of eighteen years, and the youngest, six years. One of the children, a boy, also worked, at least for a while, in or near Hoquiam.

The only experience that appellant had previously had in working for wages was in about 1941, when she was employed as a fish packer for a short time, at a wage of $3.15 a day.

During the period of appellant's employment at the Boeing plant, she rode to work in the family car, at such times as she had charge of it; a part of the time, when her work shift was coincident with that of her husband, she accompanied him; at times, her son, on his way to work, would take her in the car; and, at other times, when the car was not available to her, she would ride with neighbors, and sometimes, at night, would walk home, at least a part of the way.

On September 5, 1945, appellant was separated from work at the Boeing plant, owing to the fact that the plant closed down. On September 11th, she filed with the office of unemployment compensation and placement, hereinafter referred to as "the department," her application for the statutory "initial determination" of benefits potentially payable to her under the provisions of the unemployment compensation act.

Upon the filing of her application, she was classified as potentially eligible to receive benefits under the act, subject to the eligibility requirements thereof. At the same time, she was offered what is termed a "referral," to work as a laborer at Grays Harbor Chair Manufacturing Company, in Hoquiam, at a wage of 68½ cents an hour. She refused to accept the referral, or job, however, for the reasons, as stated by her in writing, that:

"I have sinus trouble and I don't think I could stand working in the wood dust. Also the pay is too low. I was making $1.10½ an hour at Boeing's."

On September 14, 1945, an authorized representative of the department made a formal "Determination of Denial of Benefits" with respect to the appellant, stating as the reason for the denial the fact that appellant had refused the referral to Grays Harbor Chair Manufacturing Company. This determination was delivered to the appellant on September 25, 1945.

In the meantime, on September 18th, appellant renewed her claim for benefits and was, at that time, referred to a job at Haines Seafood Packing Co., in Hoquiam, at a wage of seventy-five cents an hour. She was willing to accept that job, but, when she communicated with that company, she was told that they were not then hiring anyone.

Again, on September 25th, the department referred her to another job, involving employment at Harbor Plywood Company, in Aberdeen. She refused to accept that job, however, because of the alleged prevalent dust and also because they rotated shifts, making it impossible for her to be home at night with her children.

Upon receipt by her of the "Determination of Denial of Benefits," mentioned above, appellant on September 25, 1945, gave notice of appeal to the appeal tribunal of the department. The grounds of her appeal, as stated by her in the notice, were:

"I don't think the work offered at Grays Harbor Chair Co. was suitable at 68½¢ an hour. Anyway I have sinus trouble and can't work in dust."

The matter came on regularly for hearing before the appeal tribunal, at which time evidence was taken consisting of appellant's testimony and certain records of the department. Further reference to that evidence will be made later. The tribunal, after hearing and considering the evidence, made findings of fact, from which it concluded that, although appellant had good cause for failing to apply for the job at Grays Harbor Chair Manufacturing Company,

she was nevertheless not "available for work," within the meaning of the unemployment compensation act. Upon that expressed conclusion, the appeal tribunal rendered its decision denying appellant benefits under the act until she should establish that she was available for work and in all other respects legally eligible.

Appellant then petitioned the commissioner of the department to review the decision of the appeal tribunal. Upon such review, the decision of the tribunal was affirmed. She then appealed to the superior court, and, after a hearing, the court entered judgment affirming the decision of the appeal tribunal, as approved by the commissioner. The appeal to this court then followed.

Appellant's assignments of error present two questions for decision upon this appeal. On the first question, appellant's contention is that the appeal tribunal erroneously and without jurisdiction determined an issue which was not involved in the appeal to that tribunal. This contention is based upon the following situation shown by the record: In the original "Determination of Denial of Benefits" to the appellant, the official representative of the department denied the statutory benefits on the ground that appellant had refused the "referral" to Grays Harbor Chair Manufacturing Company, contrary to the requirements of § 76, chapter 35, p. 115, Laws of 1945, Rem. Supp. 1945, § 9998-214; whereas the appeal tribunal, on appeal from that determination, concluded that appellant had good cause for her refusal to apply for that particular job, but, nevertheless, concluded that appellant was shown to be not "available for work," within the meaning of § 68(c) of the 1945 act, Rem. Supp. 1945, § 9998-206(c), and, on that basis, rendered its decision denying benefits to her.

In order to elucidate the immediate question, as well as the one to follow later, we shall refer to certain sections of the unemployment compensation act, contained in chapter 35, Laws of 1945, and reproduced in Rem. Supp. 1945, § 9998-140 *et seq.* For convenience, we shall here employ the section numbers used in Rem. Supp. 1945.

Section 9998-206 provides:

"An unemployed individual shall be eligible to receive waiting period credit or benefits with respect to any week *only* if the Commissioner finds that . . .

"(c) he is able to work, and is available for work in any trade, occupation, profession, or business for which he is reasonably fitted. *To be available for work an individual must be ready, able, and willing, immediately to accept any suitable work which may be offered to him and must be actively seeking work; . . .* " (Italics ours.)

Section 9998-214 provides that an individual shall be disqualified for benefits if the commissioner finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commissioner, or to accept suitable work when offered to him, or to return to his customary self-employment (if any) when so directed by the commissioner.

Sections 9998-220 and 9998-221 provide, respectively, for filing application for initial determination and claim for benefits, on the part of the individual claimant, and for the making of an initial determination, by an official representative of the department, of such application, stating the maximum amount of benefits potentially payable to the claimant.

Section 9998-224 provides that if waiting period credit or the payment of benefits shall be denied to any individual, the claimant shall be promptly notified by mail or delivery of written notice of the denial and the reasons therefor.

Section 9998-256 provides that any applicant or any interested party may file with the appeal tribunal of the department an appeal from such determination.

Section 9998-258 reads as follows:

"In any proceeding before an appeal tribunal involving a dispute of an individual's initial determination, *all matters covered by such initial determination shall be deemed to be in issue irrespective of the particular ground or grounds set forth in the notice of appeal.*

"In any proceeding before an appeal tribunal involving a dispute of an individual's claim for waiting period credit or claim for benefits, *all matters and provisions of this act relating to the individual's right to receive such credit or benefits for the period in question shall be deemed to be in*

*issue irrespective of the particular ground or grounds set
forth in the notice of appeal.*

"In any proceeding involving an appeal relating to bene-
fit determinations or benefit claims, the appeal tribunal,
after affording the parties reasonable opportunity for fair
hearing, shall render its decision *affirming, modifying, or
setting aside the determination or decisions of the Unem-
ployment Compensation Division.* The parties shall be
duly notified of such appeal tribunal's decision together
with its reasons therefor, which shall be deemed to be the
final decision on the initial determination or the claim for
waiting period credit or the claim for benefits unless, within
ten days after the date of notification or mailing, which-
ever is the earlier, of such decision, further appeal is per-
fected pursuant to the provisions of this act relating to
review by the Commissioner." (Italics ours.)

Section 9998-262 prescribes the procedure for review by
the commissioner of the proceedings before the appeal tri-
bunal, and provides that, upon the basis of the evidence
submitted to the appeal tribunal and such additional evi-
dence as the commissioner may order to be taken, the com-
missioner shall render his decision, *affirming, modifying,
or setting aside the decision of the appeal tribunal.*

When the present claim was called for hearing before the
appeal tribunal, the appellant appeared in person and was
represented by an attorney. At the commencement of the
hearing, the appeal examiner announced that the proceed-
ing was scheduled for the purpose of giving appellant the
opportunity to introduce any testimony or evidence she
wished with respect to her appeal, and for the further
purpose of taking up any other matters pertaining to her
right to benefits under the unemployment compensation
act.

After introducing the departmental record with respect
to appellant's claim and interrogating her with reference
to her refusal to accept the job at the Grays Harbor Chair
Manufacturing Company, the appeal examiner announced
that, in accordance with the provisions of the 1945 act, he
would then further inquire, by interrogation of appellant,
concerning her "availability" for work. The announcement

was addressed directly to appellant's attorney, and no objection was raised by him.

The following testimony from the appellant was then adduced:

"Q. (By Examiner Walsh) Where have you looked for work in town since you have been out of work? A. Just out at the employment bureau is all. Mr. Loomis [appellant's attorney]: I didn't hear you. The Witness: Just out at the employment bureau is all. Q. (By Examiner Walsh) You have not gone around to contact any of the concerns? A. No, I have not. Q. Have you any ideas where you would like to work? A. Well, no, I have done cannery work. I have not done any other kinds of work and it has to be work, day time work, because I have a family and I can't leave them in the evening. Q. So if it would have been swing shift, you would not be able to take that? A. Oh, no. Q. Well, if offered work at Lambs Grays Harbor or other places where they don't do any wood working and the wages were less than 90 cents an hour would you be willing to take it? A. Yes, sir. Q. How about clerking at a store or anything like that? A. I don't know whether I could clerk or not. I don't think I am hardly quick enough to count change and things like that. I have gone to 11th grade. Its been so many years ago that I don't know whether I could do that or not. Q. How about this fish packing place. Do they work more than one shift, do you know? A. Well, I don't know what they do any more. I know they are running or were here a short time ago. Q. How long ago was it that you worked for them? A. I worked for them, oh, it must have been four years ago. Q. That is the only work experience you have had? A. Uh huh. Q. How many children do you have? A. Five. Q. What is the oldest and youngest? A. The oldest is 18 and the youngest is 6. Q. All at home? A. Yes. Q. Could you take a job anywhere in Hoquiam or Aberdeen? A. I could provided I can get transportation. The only thing is, out there we have no bus and it is almost two miles to the closest bus. There aren't many people out there working in town. It may be that some one will be going nearby and if it is the same hour that we are leaving, I could ride to town with them and take a bus from there. Some of those fellows work at the plywood and they change shifts and my husband does also. Q. How did you get to work when working at Boeings? A. Well, that is kind of a long story. Part of the week I have our car and part of it

my son who is working in town at that time and he would take me with him and some nights we walked home because my husband worked the swing shift and he would take us in the morning and we would walk home that night. Q. If you are offered work in Aberdeen or Hoquiam now, do you have any idea just what arrangement you would make as far as transportation is concerned? A. I have no idea right now just what I would do because I have not gone out and talked to any of the neighbors recently."

To none of this evidence did appellant's counsel make any objection, either on the ground that the evidence was irrelevant, immaterial, or incompetent, or on the ground that the appellant had not been afforded a reasonable opportunity for a fair hearing on the question of her availability for work; nor did counsel request a continuance of the hearing in order to prepare himself to meet that issue. On the contrary, appellant, on further examination by her own attorney, offered testimony corroborative of that set forth above.

■ The first time that appellant raised any objection to the consideration of the evidence bearing on her availability for work, as above recited, was in her petition for review by the commissioner. The objection came too late, (1) because, under Rem. Supp. 1945, § 9998-262, the commissioner was required to render his decision on the basis of the evidence which was submitted to the appeal tribunal, no additional evidence having been ordered by the commissioner; and (2) because, under Rem. Supp. 1945, § 9998-266, on appeal to the superior court, only such issues of law may be raised as were properly included in the hearing before the *appeal tribunal. Unemployment Compensation Department v. Hunt,* 17 Wn. (2d) 228, 135 P. (2d) 89.

■ As to the jurisdiction of the appeal tribunal to consider the additional matter of appellant's availability for work, Rem. Supp. 1945, § 9998-258, quoted above, specifically provides *that all matters covered by the initial determination and all matters and provisions of the act relating to the individual's right to receive credit or benefits*

*shall be deemed to be in issue, irrespective of the particular ground or grounds set forth in the notice of appeal.* The appeal tribunal had the authority and the right not only to consider the testimony respecting the particular disqualification previously found by the official representative of the department, but also to inquire whether appellant was in all respects eligible to receive benefits under the act.

■ In this connection, appellant makes the further contention that, since the power of the appeal tribunal is by statute restricted to "affirming, modifying, or setting aside the determination" previously made by the official representative of the department, its power was exhausted when it decided that appellant had good cause for failure to apply for the job at Grays Harbor Chair Manufacturing Company, and that the final decision of the tribunal did not constitute a "modification" of the earlier decision, but, rather, a new decision entirely. We cannot agree with this contention. Both decisions resulted in the denial of benefits, but upon different grounds. The official representative's decision was on the ground of appellant's failure to apply for the job to which she had been referred. The appeal tribunal's decision was that the appellant was not presently entitled to benefits under the act, not upon the ground that she had failed in the one instance to apply for suitable work, but on the ground that she was not "available for work and in all other respects eligible under the act." The decision of the appeal tribunal constituted simply a modification of the ground upon which the prior decision or determination of the official representative was made.

For the reasons heretofore given, we consider appellant's first assignment of error not well taken.

Upon her second series of assignments of error, appellant contends that, in any event, the decision of the appeal tribunal was not supported by substantial evidence, but, on the contrary, was arbitrary and capricious, based on surmises and unfounded presumptions. The evidence upon which the appeal tribunal based its decision has heretofore been set forth at length.

The position taken by the respondent commissioner and the department is that the evidence shows that appellant was ineligible to receive benefits under the act, because she was not "available for work," under and within the meaning of Rem. Supp. 1945, § 9998-206(c), quoted above, in that (1) she was not *actively seeking work,* as required by the statute; (2) she restricted her work to daytime employment; and (3) she had no available means of transportation to and from work. The findings of the appeal tribunal were based on those three factors.

 In our consideration of this question, we proceed upon the general rule applicable to such proceedings, namely, that the burden of proof to establish a claimant's rights to benefits under the act rests upon the claimant. *Haynes v. Unemployment Compensation Comm.,* 353 Mo. 540, 183 S. W. (2d) 77; *Copeland v. Oklahoma Employment Security Comm.* (Okla. 1946), 172 P. (2d) 420.

In the *Haynes* case, *supra,* the court said:

"An unemployed individual is eligible to receive benefits only if the commission finds that the required conditions have been met. The claimant assumes the risk of non-persuasion and we think the general rule applicable to ordinary court proceedings applies. 'The burden of proof, meaning the obligation to establish the truth of the claim by preponderance of the evidence, rests throughout upon the party asserting the affirmative of the issue . . . This burden of proof never shifts during the course of the trial.' "

The decisions from this state are in accord with that rule. *In re St. Paul & Tacoma Lbr. Co.,* 7 Wn. (2d) 580, 110 P. (2d) 877; *Andreas v. Bates,* 14 Wn. (2d) 322, 128 P. (2d) 300; *In re Polson Lbr. & Shingle Mills,* 19 Wn. (2d) 467, 143 P. (2d) 316.

 Another well-settled rule in this state, with respect to such cases, is that the administrative determination of the facts is conclusive, unless it be wholly without evidential support, or wholly dependent on a question of law, or clearly arbitrary or capricious. *In re St. Paul & Tacoma Lbr. Co., supra; Mulhausen v. Bates,* 9 Wn. (2d) 264, 114 P. (2d) 995; *Andreas v. Bates, supra; In re North River Logging Co.,* 15 Wn. (2d) 204, 130 P. (2d) 64; *Wicklund v. Com-*

*missioner of Unemployment Compensation,* 18 Wn. (2d) 206, 138 P. (2d) 876, 148 A. L. R. 1298; *In re Polson Lbr. & Shingle Mills, supra.*

■ The determination of the specific question presently before us depends upon the meaning and import of the phrase "available for work," as used in the unemployment compensation act, and upon those factors which, if present, could be said to render the individual available for employment, but whose absence would tend to show his unavailability for work. No one prescribed set of factors can be compiled to govern every individual claimant in every situation, but each case depends largely upon its own peculiar facts and circumstances.

The statute itself, Rem. Supp. 1945, § 9998-206 (c) defines the term thus:

" . . . To be available for work an individual must be ready, able, and willing, immediately to accept any suitable work which may be offered to him and must be actively seeking work."

While this definition gives a fair idea of what is, in general, necessary to constitute availability, its application to a specific case hinges to a great extent upon the significance and shade of emphasis to be given to the various verbs, adjectives, and adverbs used therein, when considered in the light of the particular situation presented.

There are no cases, decided by this court, which throw any light upon the term, "available for work," and so, for guidance, we look to the cases adjudicated elsewhere. We cite the following as furnishing aid. *Ford Motor Co. v. Appeal Board of Michigan Unemployment Compensation Comm.* (Mich. 1947), 25 N. W. (2d) 586; *Mills v. South Carolina Unemployment Compensation Comm.,* 204 S. C. 37, 28 S. E. (2d) 535; *Kut v. Albers Super Markets,* 146 Ohio 522, 66 N. E. (2d) 643; *Keen v. Texas Unemployment Compensation Comm.,* 148 S. W. (2d) (Tex. Civ. App.) 211; *Salavarria v. Murphy,* 266 App. Div. 933, 43 N. Y. S. (2d) 899; *Grant Co. v. Board of Review of Unemployment Compensation Comm.,* 129 N. J. L. 402, 29 A. (2d) 858; *Copeland*

*v. Oklahoma Employment Security Comm.* (Okla. 1946), 172 P. (2d) 420.

In the *Ford Motor Co.* case, *supra,* the facts as delineated in the opinion of the Michigan supreme court were as follows: The claimant and appellant, Drusilla Koski, was employed by the Ford Motor Company in March, 1943, as a bench hand, and continued in such employment until October 15, 1944, when she was laid off. During the period referred to, claimant worked on the afternoon shift from 3:40 to 11:40 p. m. On October 23rd, following her layoff, she filed a claim for unemployment compensation under the statute. Thereafter, on January 17, 1945, she was recalled by the Ford Motor Company, and continued to be employed on the afternoon shift until April 18, 1945. The question in issue in the case was whether claimant was entitled to unemployment compensation during the period from October 23, 1944, to the date of re-employment in January, 1945.

The unemployment compensation commission determined in the first instance that claimant had met the conditions prescribed by the statute, and was in consequence entitled to compensation. Thereafter, however, claimant informed the claims examiner of the commission that she was not available for work except on the afternoon shift. Her reason for limiting her availability for work to the afternoon shift was based on the fact that she had two boys, ten and seventeen years of age, respectively, and wished to be at home mornings in order to awaken them, get their breakfasts, and start them to school. Because of the limitation of her availability, the commission reconsidered the matter and denied compensation. On appeal to the referee, the decision of the commission was reversed. The appeal board sustained the referee. Thereupon, the Ford Motor Company applied to the circuit court for a writ of certiorari to review the proceeding. Upon a hearing in the circuit court, the trial judge held that, under the undisputed evidence in the case, the claimant was not entitled to compensation, and entered judgment reversing the decision of the appeal board. The claimant then appealed to the supreme court, which affirmed the judgment of the trial court.

On the issue of the claimant's availability for work, the supreme court of Michigan said:

"There is nothing in the statute to justify the conclusion that the legislature intended a claimant might limit his employment to certain hours of the day where the work he is qualified to perform is not likewise limited. It may be assumed that, in a so-called 'around-the-clock' operation, the work on different shifts does not vary in character. When claimant stated she would not accept work except on the afternoon shift, she clearly made herself unavailable for work of the character that she was qualified to perform. She took such position, not for any reason connected with the character of the labor itself, but rather because of the situation in her home."

In the *Mills* case, *supra*, a similar situation was presented. The claimant, Pauline Moss Gaines, mother of four children ranging in age from two to nine years, was employed by Judson Mills during the spring of 1942, as a quiller tender on the third shift. She had never previously been employed at a wage compensation. Prior to November 7, 1942, a relative had looked after claimant's children while she was working, but on that date the relative left. Being unable to find anyone else to care for the children, claimant was compelled to give up her work and remain at home. Subsequently, on several occasions, she was offered work at Judson Mills, on the third shift, but refused each time to accept it. On January 11, 1943, she made application for unemployment benefits. The claim was denied by a deputy of the commission and by the appeal tribunal, but on appeal to the full commission it was allowed. The former employer then appealed to the court of Common Pleas of Greenville county, South Carolina. That court reversed the decision of the full commission, and in its reported opinion said:

"The decision in this case hinges upon the meaning of the term 'available for work.'

". . . I [Judge Oxner, writer of the opinion] find nothing in the Act itself or in the circumstances surrounding its passage to indicate an intention on the part of the Legislature to provide benefits for a worker compelled to

give up his job solely because of a change in his personal circumstances. . . .

"The primary purpose of this provision [relating to the payment of benefits] would be greatly impaired, if not completely defeated, if benefits were paid to persons who became unemployed, not because the employer could no longer provide them with work but solely because of changes in their personal circumstances."

On appeal to the supreme court of South Carolina, the decree of the trial court and the conclusions reached by the trial judge were approved in a *per curiam* opinion, and the appeal of the claimant was dismissed.

In the *Kut* case, *supra,* the plaintiff formerly was employed as an order clerk and as a checker by Albers Super Markets, Inc. That employment was terminated by the refusal of the plaintiff to continue to perform the work assigned to him. Several days later, he was referred to two companies, each of which was willing to employ him as a shipping clerk. However, each company refused to accept him for the reason that he declined to work on Saturday, which is the day the plaintiff claimed he observed as his Sabbath. The plaintiff thereupon filed an application for unemployment benefits. After a "tortuous" statutory course, involving the original hearing and four reviews, the case finally reached the supreme court of Ohio, where the claim for benefits was disallowed. The court said:

"The statute does not designate particular days of the week. It provides that in order to be entitled to benefits a claimant must be 'able to work and available for work in his usual trade or occupation, or in any other trade or occupation for which he is reasonably fitted.' Hence, he must be available for work on Saturday if this is required by his usual trade or occupation, as in this instance."

In the *Keen* case, *supra,* the facts and the ruling thereon by the court of civil appeals of Texas sufficiently appear in the following paragraph of the opinion:

"In the instant case, it is admitted that appellant [the claimant] voluntarily resigned a position with an oil company in Beaumont, Texas, to attend the University of Texas, and that he will refuse to accept any employment between the hours of 9 A. M. and 1 P. M., for the reason that such

employment will interfere with his school work. He is therefore not available for full time employment similar to that in which he was previously engaged."

This ruling was made despite the fact that the time required for claimant's study and the additional four class hours would not interfere with his doing eight hours work between one p. m. and nine a. m.

In the *Salavarria* case, *supra*, it was held that where an unemployment insurance claimant, who had worked in her New York home as an embroidery machine operator, and later moved to Washington, D. C., with her husband and child, and there refused to accept referral to a job as a sewing machine operator in a business establishment on the ground that she had to take care of her child, was not entitled to unemployment insurance thereafter, notwithstanding the fact that it was impossible to obtain employment in Washington as a home worker.

In the *Grant* case, *supra*, the facts, in brief, were these: The claimant, a woman, had been employed as a clerk in a variety store. On April 18, 1941, she voluntarily left that employment until October 25, 1941, when she decided to seek work. On the next day, she made application for unemployment benefits. From then on, she sought factory employment and obtained such employment on January 15, 1942. In the meantime, her first employer reported to the unemployment compensation commission on November 12, 1941, that work at its store, comparable to that formerly done there by the claimant and at equal or greater pay, was then, and during the entire period of her unemployment had been, available to her. The commission thereupon directed the claimant to go back to her original employer and apply for a job, but she refused to do so for the reason that she desired the higher compensation to be had from factory work. In denying her right to benefits under the act, the supreme court of New Jersey said:

"Does work, otherwise suitable, become statutorily unsuitable for the single reason that the worker desires and hopes to get, but has not yet obtained, a position elsewhere with larger pay? We think not. An apt illustration may

be currently found in the competition for labor in the war industries. It is, of course, quite human that a worker should aspire to the highest wage procurable, and it is her right to seek it. But may a worker detach herself from a position that does not, and by the nature of the industry of which it is a part cannot be made to, carry a wage equal to that paid in a war plant, remain voluntarily and indefinitely idle while she seeks the more highly paid employment, and meanwhile obtain unemployment benefits chargeable to the fund of that enterprise which she has abandoned and which invites her return—this upon the reasoning that she is *available for and cannot get suitable employment?* The answer to that question must, we think, be in the negative."

In the concluding portion of the opinion, the court said further:

"Participation in benefits is granted only to those who in addition to being able to work are available for work. It was not merely that the applicant had failed to apply for a designated job; she had made herself definitely unavailable for any position in that scale of employment. A further tender to her of such a position, at such pay, would have been futile. She was not in the market for such employment. A tender to one who announces in advance that the tender will not be accepted is ordinarily unnecessary."

In the *Copeland* case, *supra,* the facts, as set forth in the opinion, were substantially as follows: Copeland, the claimant, was a married man, about sixty-three years of age, and resided in Meeker, Oklahoma, a town of about five hundred inhabitants, forty-five miles distant from Oklahoma City. There was no opportunity for employment in Meeker or in its immediate vicinity. Claimant earned his employment credits at and in the vicinity of the Douglas Aircraft Company plant, about ten miles east of Oklahoma City and about thirty-five miles from Meeker. Other than at the aircraft plant and at an air depot nearby, there was no market for labor, for one residing in the town of Meeker, nearer than Oklahoma City, forty-five miles away, or Shawnee or Chandler, each being about sixteen miles distant from Meeker. On communicating with his labor union in Oklahoma City, he learned that jobs were open in that city, but that the hours of work were from eight

a. m. to five p. m. In his claim for benefits, he alleged that he was unable to secure a ride or obtain transportation from Meeker to Oklahoma City and work during those hours. His evidence showed that he had no transportation of his own and that he had never driven an automobile. The evidence further showed that there was no transportation between Meeker and Chandler, or between Meeker and Shawnee, and that, because of age requirements, he was no longer available for work at the Douglas plant. After he had filed his claim, he was referred to a job at Norman, Oklahoma, about sixty-five miles from his home. He declined the "referral" because there were no transportation facilities, and he was unwilling or financially unable to move nearer the work. His claim went through the usual process, being reviewed four times before it reached the supreme court of Oklahoma, where it was finally denied.

Basing its decision on the ground that the claimant had failed to meet the burden of showing that he was "available for work," within the meaning of the Oklahoma employment security act, the court said:

"Where there is no duty resting upon the employer, from custom or contract, express or implied, to furnish means of transportation to his employee to and from work, the burden is cast upon the employee to provide himself with such transportation. When he has this burden and is unable to provide himself with such transportation, even through no fault of his own, he is not available for work. [Citing case.]

"In a case of this character, a finding of the Commission or Board of Review that a claimant was not available for work and an order denying benefits need not be supported by affirmative, substantial evidence tending to show that claimant was not available for work, because the burden is upon the claimant to show prima facie that he is entitled to the benefits claimed. *Haynes v. Unemployment Commission, supra.*

"If a claimant's circumstances are such that he cannot accept any work whatever because he is not available for work within the meaning of the Act (Sec. 4(c), Miss. Unemployment Compensation Law, Code 1942, § 7378(c) and where the claimant has definitely stated that he could not

accept work because of his lack of transportation, he does not meet the requirements of the law. 8310 Miss. Ben. Series, Vol. 7, No. 1."

In addition to the foregoing adjudicated cases, we also cite, for illustrative purposes, the following decisions on the subject, rendered by various superior courts: *Dinovellis v. Danaher* (Hartford County, Conn.), 2 CCH, Unemployment Insurance Service, 10,059, par. 1950.02 (woman refusing employment which did not allow her to be at home with her family during the evening hours, held not available for work); *Flores v. Danaher*, 11 Conn. Supp. 337, 2 CCH 10,062, par. 1950.11 (woman held not available for work, because she was not genuinely interested in seeking employment for which she was well qualified); *Carwood Mfg. Co. v. Huiet* (Barrow County, Ga.), 2 CCH 14,086, par. 1950.06 (woman unable to return to employment because of having lost her means of transportation, held ineligible to benefits); *Huiet v. Schwob Mfg. Co.* (Muscogee County, Ga.), 2 CCH 14,083, par. 1950.049, affirmed by the supreme court of Georgia, 27 S. E. (2d) 743 (holding that woman who leaves employment to be with her husband is unavailable for work and ineligible for benefits under the act); *Department of Labor & Industries v. Unemployment Compensation Board*, 154 Pa. Super. 250, 35 A. (2d) 739 (wife quitting her employment to be with her soldier husband while in training camp, held not available for work); *Bohannon v. Unemployment Compensation Comm.* (Yakima County, Wash.), 6 CCH 50,060, par. 1950.079 (claimant who refused work during customary layoff because he considered the wages insufficient and because he felt entitled to a rest, held not available for work); *Goodwin v. Riley* (Yakima County, Wash.), 6 CCH 50,057, par. 1950.022 (held that a lumber-mill worker who was unemployed because of a customary two-month shutdown of the mill and who refused work 60 miles distant because he could not drive that distance every day and because he required a special diet, was not available for work when he failed to make a reasonable effort to secure work locally or to investigate the possibility of traveling by bus); *Ameri-*

*can Viscose Corp. v. Board of Review* (Kanawha County, W. Va.), 6 CCH 51,038, par. 1950.039 (claimants who declined night work because of their parental or home duties, declared ineligible for benefits, on the ground of being unavailable for suitable work).

■ These cases, from which we have quoted at length or the holdings of which have been indicated, and the reasoning presented therein are decisive of the case at bar. The evidence shows that the appellant claimant definitely restricted her work to daytime employment, regardless of whether or not available work required that she report for a night shift; furthermore, she failed to meet the burden of showing to the satisfaction of the commission that she had proper transportation if work were offered to her. In short, she failed to prove that she was "available for work," within the meaning of the act in question.

Added to this is the fact that appellant failed to show that she herself had *actively* sought work, as positively required by Rem. Supp. 1945, § 9998-206 (c), quoted above.

■ In passing, it may be observed that the original unemployment compensation act (Laws of 1937, chapter 162, § 4, p. 578) did not require that the claimant "must be actively seeking work." That element was first made one of the benefit eligibility conditions in 1941 (Laws of 1941, chapter 253, p. 874, § 4 (c)) and was carried forward into the 1945 act. Obviously, the legislature intended to make that requirement one of the benefit eligibility conditions to recovery of benefits under the act.

Appellant appears to have contented herself with merely making an application for the money benefits of the act, without any personal endeavor to locate and secure a job. It will be recalled that, although she had once worked at a cannery and knew that it was still operating, she did not apply for work there, probably because the wage she had formerly received at that place was small in comparison to what she had latterly earned at the Boeing plant. The evidence also shows that she made no inquiries whatever for employment of any kind in or near Hoquiam or Aberdeen.

The act requires of a claimant thereunder something more than merely informing the department that he or she is out of work and therefore claims unemployment compensation. It requires the individual to make an active and reasonable effort to secure suitable employment. Were this not a requirement and were its mandate not obeyed, it is easy to see how the funds created by the unemployment compensation act would soon disappear, like chaff before the wind, leaving no protection to those who are rightfully entitled thereto by reason of their enforced unemployment.

We agree with the appeal tribunal, the commissioner, and the trial court that the appellant has not shown that she is "available for work," within the meaning of the Washington act.

The judgment is affirmed.

MALLERY, C. J., ROBINSON, JEFFERS, and HILL, JJ., concur.

