[No. 44134.    En Banc.    September 16, 1976.]

LLOYD K. MACOMBER, ET AL, *Respondents*, v. THE
DEPARTMENT OF EMPLOYMENT SECURITY, ET AL,
*Appellants.*

*Slade Gorton, Attorney General, Joseph M. Littlemore* and *Michael E. Tardif, Assistants, Bogle & Gates,* and *Dustin C. McCreary,* for appellants.

*Vance, Davies & Roberts,* by *William A. Roberts* and *Herman L. Wacker, Hafer, Cassidy & Price,* by *M. Lee Price,* and *John R. Stair, P.S., Inc.,* for respondents.

HUNTER, J.—This is an appeal from a superior court judgment affirming in part and reversing in part decisions of the appeal tribunal and commissioner of the Employment Security Department that had denied benefits both to claimants filing retroactive claims and to claimants issued redeterminations following the decision in *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969).

The basic facts of this case involve the coast-wide strike that was the subject of *Ancheta v. Daly, supra.* Employees of Foss Launch and Tug Company (Foss), Lake Union Dry Dock (Lake Union), Lockheed Shipbuilding and Construction Company (Lockheed), and Todd Shipyards Corporation (Todd) were unemployed as a result of the strike. A number of these employees filed claims for unemployment compensation benefits and the question in *Ancheta* was whether the labor dispute disqualification, RCW 50.20.090, made them ineligible. *See Ancheta v. Daly, supra* at 256-57. This court in *Ancheta* determined that the labor dispute disqualification was not applicable because there would have been no work available even if the claimants had crossed the picket lines. *See Ancheta v. Daly, supra* at 263-64. We held on page 265, that the claimants in *Ancheta* were entitled to benefits. Not all the employees affected by the strike had claimed benefits, however, and of those who had, only a few had pursued their claims through the appeal process, which resulted in the *Ancheta* decision. For example, only five employees of Todd and one employee of

Lake Union were parties to, and received benefits under, the *Ancheta* decision.

The issues in the present case arise from certain aspects of *Ancheta v. Daly, supra,* and events precipitated by that decision. The major legal issue presented, namely, the interpretation and application of RCW 50.20.160(4), is rather straightforward, but the specific facts are quite complicated.

To begin with, Lockheed was the only company of the four involved in the present case to pursue and challenge the benefit claims in *Ancheta* through the reviews before the Superior and Supreme Courts. Consequently, Todd, an appellant in the present case, was not a party to the decision in *Ancheta*. But both Lake Union and Todd, through their assistant director of personnel and labor relations, Lawrence Hagan, had participated in the hearing before the appeal tribunal in *Ancheta*. They both received notice from the Attorney General that the commissioner's denial of benefits was being appealed to the superior court. The letter from the Attorney General included a copy of the commissioner's notice of appearance in the appeal[1] and was sent to Todd and Lake Union as interested parties in the matter. The letter stated that the department would prepare the record of the administrative tribunal, file the original record with the superior court, send a copy to Todd and Lake Union, and note the matter for issue. Todd subsequently received a copy of the record of the administrative

[1]At the time the appeal proceedings in *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969), took place, the following requirements set out by statute were applicable:

Such appeal shall be perfected by serving a notice of appeal on the Commissioner personally, by personal service, or by mailing a copy thereof to the Commissioner, and by filing the notice of appeal together with proof of service thereof with the Clerk of the Court . . . *The Commissioner shall* within twenty days after receipt of such notice of appeal *serve and file his notice of appearance* upon appellant or his attorney of record and such appeal shall thereupon be deemed at issue.

(Italics ours.) Laws of 1945, ch. 35, § 128, p. 143; as amended RCW 50.32.120.

proceeding, but it took no further action and did not appear in the appeal.

Following the decision in *Ancheta*, several things occurred with regard to Foss, Lockheed, Todd, and Lake Union employees who were not parties to that decision and had not received benefits thereunder. The several fact patterns involve variations on two basic situations. First, the department issued redeterminations pursuant to RCW 50.20.160(4) to those employees who had filed claims prior to the decision in *Ancheta* but had not pursued their administrative remedies to exhaustion. Based on the *Ancheta* decision, which disposed of the labor dispute disqualification issue, benefits were granted to these claimants under the redeterminations made by the department. Second, a large number of retroactive claims were filed with the department both by claimants filing initial claims and by claimants who had filed previously but had not claimed all the weeks during the labor dispute. Although the department passed these claims on the issue of the labor dispute disqualification, it issued determinations denying benefits because the claims were not timely filed in accordance with WAC 192-12-140.

In both situations the results rendered by the department were appealed. Todd and Lake Union appealed from both the redeterminations, which allowed benefits to claimants who had filed claims prior to *Ancheta* but had not exhausted their administrative and judicial remedies,[2] and the initial determinations, issued with regard to the retroactive claims, insofar as they cleared the claimants on the labor dispute disqualification issue. Most, but not all, of the claimants who filed retroactive claims timely appealed from the initial determinations denying them benefits based on late filing.

All appeals were heard by an appeal tribunal consisting of one hearing examiner. Based on substantial evidence

---

[2]Lockheed and Foss did not appeal the allowance of benefits to their employees who had filed claims prior to the *Ancheta* decision but had failed to exhaust their administrative and judicial remedies.

introduced at the hearing, the examiner found that the work stoppage at Todd and Lake Union was related to a labor dispute and that there had been work available at those premises. He concluded that the labor dispute disqualification contained in RCW 50.20.090 was applicable to the claimants employed by Todd and Lake Union. The examiner therefore reversed the department's redeterminations and denied benefits to claimants employed by Todd and Lake Union on the labor dispute disqualification.

In addition, the examiner reversed the department's denial of benefits in a number of the cases involving retroactive claims. Based on information supplied by the claimants when the retroactive claims were filed, the examiner determined that in certain cases good cause existed for the untimely filing. In the cases where the examiner found that there was no good cause for the untimely filing, he upheld the department's denial of benefits. Generally, good cause was found to exist where the claimants filing retroactive claims had been directly misled by the department's local office as to their right to file for benefits. The examiner also denied benefits, based on lack of jurisdiction, to those claimants who had not filed timely appeals from the department's initial determinations denying their retroactive claims.

The findings and the decision of the appeal tribunal were upheld by the commissioner. The commissioner affirmed the appeal tribunal decision denying benefits to claimants employed by Lake Union, based on the finding of a labor dispute disqualification, on July 9, 1971. The decision denying benefits for the same reason to claimants employed by Todd was affirmed on July 13, 1971. The commissioner affirmed the appeal tribunal's decision as to retroactive claims, which both granted and denied benefits, on December 10, 1971.

Following the appeal tribunal's disposition, the claimants fell into several distinct categories. Most of the groups appealed to the superior court. Two groups, however, were not involved in the appeal from the commissioner's affirm-

ance of the appeal tribunal's decision. One group not before the superior court consisted of claimants who had filed prior to *Ancheta* and were employed by Lockheed and Foss, the two employers who had not appealed from the department's redeterminations granting benefits to claimants who had filed prior to *Ancheta*. The second group not before the superior court on appeal consisted of the Lockheed and Foss employees who filed retroactively and were granted benefits upon the appeal tribunal's finding that good cause existed for their untimely filing.

All claimants employed by Todd and Lake Union were before the superior court on appeal and they fell into three categories. The first group consisted of claimants who had filed claims prior to *Ancheta*, but failed to pursue further remedies, and were denied benefits when the appeal tribunal found that the labor dispute disqualification was applicable. The other two groups contained employees filing retroactive claims. They were all denied benefits by the appeal tribunal based on the labor dispute disqualification, but some were also denied benefits due to the appeal tribunal's finding that their untimely filing was not based on good cause. Thus, of the Todd and Lake Union employees filing retroactive claims, one group was denied benefits based only on the labor dispute disqualification, while the other group was denied benefits both on this ground and because of the failure to file timely. The last group appealing to the superior court consisted of Lockheed and Foss employees who filed retroactive claims and were denied benefits when the hearing tribunal found no good cause for their failure to file timely.

The superior court reversed the commissioner's decisions to the extent they had denied benefits based on either the labor dispute disqualification or the lack of good cause. The department and Todd appeal from this judgment.

· The appellant Employment Security Department, joined by appellant Todd, contends that the disposition of the labor dispute disqualification issue in *Ancheta v. Daly*, 77 Wn.2d 255, 461 P.2d 531 (1969), is not controlling with

regard to the strike situations at Todd and Lake Union. In support of this contention, they point out that the facts relating to the premises of Todd and Lake Union were not litigated at all in *Ancheta* and that Todd and Lake Union were not parties to the review proceedings before the Superior and Supreme Courts therein. They argue that applying the result in *Ancheta* to Todd and Lake Union is incorrect and cannot be justified by the doctrines of collateral estoppel or res judicata, or by RCW 50.20.160(4) as discussed in *Amburn v. Daly*, 81 Wn.2d 241, 501 P.2d 178 (1972). We disagree, however, because as discussed below, RCW 50.20.160(4) is applicable in this case and we affirm the trial court judgment insofar as it found that the issue of the labor dispute disqualification was settled by *Ancheta*.

With regard to the hearing tribunal's decision as to good cause in the untimely retroactive filings, the appellant Employment Security Department argues that the examiner's findings, affirmed by the commissioner, were not "clearly erroneous" and that in so finding, the trial court erred. As elaborated later in the opinion, we agree and therefore reverse the trial court judgment to the extent it overturned the hearing tribunal's denial of benefits where he did not find good cause for the failure to file timely.

The first major issue presented by this appeal concerns the effect to be given the resolution of the labor dispute disqualification reached in *Ancheta v. Daly, supra*. The disposition of this issue depends on the interpretation and application of the "redetermination statute," RCW 50.20.160(4), pursuant to which the department in the present case issued redeterminations to those claimants who had filed claims prior to the *Ancheta* decision but had failed to pursue further administrative and judicial remedies.

In essence, RCW 50.20.160(4) gives the commissioner of the department the authority to make a redetermination *at any time* in order to conform to a final court decision. The earlier parts of the statutory section provide for redeterminations by the commissioner in certain other circumstances

but limit the time within which they can be made to 1 and 2 years. *See* RCW 50.20.160(1), (2), and (3). The full text of RCW 50.20.160(4) provides as follows:

A redetermination may be made at any time to conform to a final court decision applicable to either an initial determination or a determination of denial or allowance of benefits. Written notice of any such redetermination shall be promptly given by mail or delivered to such interested parties as were notified of the initial determination or determination of denial or allowance of benefits and any new interested party or parties who, pursuant to such regulation as the commissioner may prescribe, would be an interested party.

The plain purpose of this statute is merely to permit the commissioner to redetermine claims affected by a final court decision so that they receive treatment consistent with that court decision.

■ As applied to the present case, we believe that the provisions of RCW 50.20.160(4) operate to preclude reexamination of the labor dispute disqualification issue that was litigated in *Ancheta v. Daly*, 77 Wn.2d 255, 461 P.2d 531 (1969). That case involved all four shipyards, Foss, Lockheed, Lake Union, and Todd, and in fact employees of Todd and Lake Union were actual parties in *Ancheta*. The employers were represented at, and participated in, the hearing before the department's appeal tribunal in *Ancheta*. Both Todd and Lake Union had notice that the commissioner's decision was being appealed and could have participated in the review process had they chosen to do so. In short, Todd and Lake Union had ample opportunity during the *Ancheta* proceedings to present their position as to the labor dispute disqualification issue. The conclusion that the *Ancheta* proceedings concerned all the employers involved in the strike and not just Lockheed is supported by a reading of the opinion in *Ancheta*, which, significantly, refers to "shipyards" in discussing the record and finding that work was not available during the strike. *See Ancheta v. Daly, supra* at 263-64. The conclusion reached in *Ancheta* on the issue of the labor dispute disqualification is a "final

court decision" within the ambit of RCW 50.20.160(4); it is applicable to all the employers involved in that case, including Todd and Lake Union.

It is next necessary to consider the scope of RCW 50.20.160(4). We recently discussed this aspect of the statute in *Amburn v. Daly, supra,* a case in which the commissioner had denied benefits to about 3,000 claimants based on an erroneous interpretation of an amendment to the Employment Security Act. Unlike the present case, all of the claimants in *Amburn* were eligible for benefits and were actually receiving them prior to the commissioner's decision to terminate benefits as of a certain date subject to reapplication under the amended act. Of those 3,000 claimants, nine appealed the determinations denying them benefits and we held in *Amburn* that they were entitled to benefits under the prior act. *See Amburn v. Daly, supra* at 249.

Our discussion of RCW 50.20.160(4) in *Amburn v. Daly, supra,* related to the claimants' contention on cross-appeal that the trial court had erred in refusing to grant class relief to the approximately 3,000 claimants, other than the nine parties to *Amburn,* whose benefits had similarly been terminated by the commissioner's action. We answered this contention as follows:

> We need not reach this contention as the Commissioner is authorized to afford relief in cases such as this where there has been a judicial determination applicable to a denial of benefits under RCW 50.20.160(4) . . . We find that the approximately 3,000 claimants, other than the petitioners, who were denied benefits based similarly on the Commissioner's incorrect interpretation of the 1970 amendments, are "interested parties" within the meaning of the term in RCW 50.20.160(4), and may be afforded relief thereby.

> It was concluded by the trial court, however, that no relief could be afforded these claimants as they did not preserve their claims. This conclusion is irrelevant to the authority of the Commissioner to grant relief under RCW 50.20.160(4). There is no such condition in the statute limiting the exercise of the Commissioner's authority.

The judgment limiting relief to the named petitioners is modified insofar as it is inconsistent with the authority of the Commissioner to grant relief to all claimants under RCW 50.20.160(4).

*Amburn v. Daly, supra* at 250. *See also Hanson v. Hutt,* 83 Wn.2d 195, 203-04, 517 P.2d 599 (1973). Thus, in *Amburn,* we recognized that it was not necessary for the trial court to grant class relief since the commissioner had statutory authority to grant relief by issuing redeterminations to the approximately 3,000 nonparty claimants.

Mindful of our discussion of the statute in *Amburn,* we proceed to determine the scope of RCW 50.20.160(4) in the present case. In other words, what is the effect of the decision in *Ancheta* once the commissioner issued redeterminations pursuant to the statute? First, application of the final court decision in *Ancheta* to those employees of Todd and Lake Union who claimed benefits prior to that decision but did not appeal requires that they be granted benefits just as the actual parties to *Ancheta* were. As we stated in *Amburn,* the claimants' failure to preserve their claims by pursuing the appeal process is irrelevant to the commissioner's statutory authority to issue a redetermination conforming to a final court order. *See Amburn v. Daly, supra* at 250. These particular claimants in the present case, just as the roughly 3,000 nonparty claimants in *Amburn,* had filed claims and received initial determinations. In order to come within the scope of RCW 50.20.160(4), it was not necessary for them actually to pursue their claims through the appeal process culminating in the final court decision that precipitated the redeterminations pursuant to the statute. The decision in *Ancheta* was dispositive of the labor dispute disqualification issue and to the extent their claims were denied for this reason, the claimants who filed prior to *Ancheta* are entitled to benefits upon the redeterminations issued by the department.

The appellants contend that this result is incorrect and unwarranted by *Amburn v. Daly, supra,* because in that case the commissioner's error was a mistake of law

applicable uniformly to all claimants whereas in *Ancheta* the commissioner's error was a mistake of fact that could vary between the claimants' various employers. We find this distinction unpersuasive, however, because RCW 50.20.160(4) was meant to allow the commissioner to conform claims to a final court decision involving either issues of law or fact. In the present case, *Ancheta* was a "final court decision" on the labor dispute disqualification issue with regard to all the employers involved therein, including Todd and Lake Union.

In support of their position, the appellants point out that RCW 50.32.020[3] specifically provides for appeals from redeterminations. They argue that unresolved factual issues are open to reexamination on appeal from a redetermination. In the present case, however, the factual issue in question, *i.e.*, whether or not there was work available, was resolved in *Ancheta*. Obviously, the appeal procedure in RCW 50.32.020 applies only to issues that were not resolved by the "final court decision" giving rise to a redetermination pursuant to RCW 50.20.160(4). Therefore, as previously stated, the labor dispute disqualification issue in the present case is not subject to reconsideration on appeal.

The second issue with regard to the scope of RCW 50.20.160(4) concerns the effect of the statute on those claimants who failed to comply with certain other statutory requirements. These claimants would include those who had filed claims prior to *Ancheta* but failed to meet weekly reporting requirements, those who filed untimely claims because they failed to file at all prior to *Ancheta*, and those who failed to file a timely appeal from the initial determinations on their retroactive claims following *Ancheta*. As indicated above in our reference to the statutory section

[3]RCW 50.32.020 states:

"The applicant or claimant, his most recent employing unit or any interested party which the commissioner by regulation prescribes, may file an appeal from any determination or redetermination with the appeal tribunal within ten days after the date of notification or mailing, whichever is earlier, of such determination or redetermination to his last known address . . ."

relating to appeals, RCW 50.32.020, the labor dispute disqualification issue was decided with regard to these claimants by the decision in *Ancheta* and is not subject to reexamination. This result is required by the reference in RCW 50.20.160(4) to "a final court decision applicable to *either* an initial determination *or* a determination of denial or allowance of benefits." (Italics ours.) Thus, the *Ancheta* decision applies to all claims that might be affected by the labor dispute disqualification issue, including those involving untimely filed claims or untimely appeals.

However, we do not interpret RCW 50.20.160(4) to mean that the claimants in these situations are automatically entitled to benefits simply because the final court decision in *Ancheta* removed the labor dispute disqualification issue. RCW 50.20.160(4) does not eliminate other requirements under the statute that must be met in order to receive benefits. The department need not disregard the filing and reporting requirements of the statute and the regulations promulgated thereunder. *See* RCW 50.20.010; WAC 192-12-140; WAC 192-12-141. They are still applicable and to the extent these requirements were not met by the claimants who did not timely file prior to the *Ancheta* decision, the department may properly deny benefits. Thus, it was not improper for the appeal tribunal to deny benefits where claimants failed to file timely or failed to report weekly without good cause. *See* WAC 192-12-140(2)(i); WAC 192-12-141(5). Likewise, the appeal tribunal was without jurisdiction to consider untimely filed appeals from the initial determinations on the retroactive claims filed after the *Ancheta* decision. *See Johnson v. Commissioner of Unemployment Compensation & Placement*, 20 Wn.2d 730, 732, 149 P.2d 367 (1944). In summary, the decision in *Ancheta* and the application of RCW 50.20.160(4) remove the labor dispute disqualification issue from consideration, but they do not dispense with the other requirements imposed by the statute or the implementing regulations issued by the department.

The second and final major issue in the present case

involves the findings by the appeal tribunal that a number of the retroactive claims filed after the *Ancheta* decision were untimely without good cause. The appeal tribunal made its findings based on information provided by each claimant's application for benefits. In order to consider the various fact situations, the claimants were placed in categories depending on the reasons given for failing to file a timely claim at the time of the strike in 1965. Counsel for the claimants agreed to these classifications and agreed that representative witnesses from each classification would be called to supplement the information supplied when each claimant filed. Claimants not wishing to be bound by this limitation were heard individually. The appeal tribunal found an absence of good cause where the claimants failed to continue reporting weekly following receipt of notice of disqualification. It also found an absence of good cause where the failure to file at all during the strike was for the following reasons: common knowledge among workers that it would be useless, decided that it would be useless, thought that the strike would be over soon, could not remember why no claim had been filed, did not know that a claim could be filed, or no reason stated for the failure to file. The hearing tribunal found that there was good cause for the failure to file in those classifications where it found that the claimants were directly misled about their right to file claims by local office personnel.

The standard of review applicable to the appeal tribunal's findings and decisions, which were affirmed by the commissioner, is provided in RCW 34.04.130. *See* RCW 50.32.120. In the present case, the results of the appeal tribunal should be reversed if they involved an "error of law" or were "clearly erroneous" or "arbitrary or capricious." *See* RCW 34.04.130(6) (d), (e), and (f). The appeal tribunal found that good cause existed for untimely filing only in those cases where the reason given for not timely filing was substantially related to the stated policy of the department's local office during the strike. We cannot say that this application of the good cause requirement consti-

tuted an error of law. *Cf. Matison v. Hutt,* 85 Wn.2d 836, 539 P.2d 852 (1975).

The next question is whether the findings of the appeal tribunal were clearly erroneous or arbitrary or capricious. We feel that they were not because the commissioner properly exercised his discretion in determining whether or not good cause existed.

The basic purpose of the regulations allowing the commissioner to except claims from the filing and reporting requirements for good cause is to provide the discretion to disregard those requirements of the statute and the regulations. The language of the regulation itself leaves little doubt as to its purpose.

> Whenever failure to comply with this regulation is for reasons which, in the judgment of the commissioner, constitutes good cause, the commissioner may make such exceptions to this regulation as he deems necessary.

WAC 192-12-140(2)(i). In other words, the commissioner has the power in certain cases to waive requirements that would otherwise be necessary in order to qualify for the receipt of benefits.

The classifications upon which the appeal tribunal made its findings in the present case were based on information furnished by the claimants at the time they filed their retroactive claims. Any claimant dissatisfied with the classification scheme used by the appeal tribunal was permitted to be heard individually and was not limited to the evidence presented by the representative witnesses from each classification. The classification scheme itself was not unreasonable and, as stated above, benefits were denied only in those classifications where the given reason for not filing at the time of the strike was not related directly to the policies of the local office. It was properly within the discretion of the commissioner to allow benefits only where the failure to file was directly connected to local office policy. We cannot say that upon a review of the entire record we are left with the conviction that a mistake was committed in the denial of benefits or that the appeal tribunal's

findings are not adequately supported by the record. Hence, the denial of benefits in those cases where the appeal tribunal found an absence of good cause for untimely filing or reporting was not "clearly erroneous" or "arbitrary or capricious." *See Stempel v. Department of Water Resources,* 82 Wn.2d 109, 114, 508 P.2d 166 (1973). Consequently, the trial court erred when it reversed the denial of benefits in those cases where the appeal tribunal and commissioner found that good cause was lacking.

Consistent with this opinion, the judgment of the trial court is affirmed insofar as it overturned the commissioner's denial of benefits based on the labor dispute disqualification; the judgment is reversed to the extent it overturned the denial of benefits based on a finding of no good cause.

STAFFORD, C.J., and ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.