[No. 1492-2. Division Two. December 30, 1976.]

EMIL R. EGGERT, *Appellant*, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent*.

*Lee A. Holley,* for appellant.

*Slade Gorton, Attorney General,* and *Stephen W. Burke* and *Joseph M. Littlemore, Assistants,* for respondent.

PEARSON, J.—Appellant, Emil R. Eggert, an unemployed machinist, was notified by the Employment Security Department that he would be denied unemployment benefits for (1) failure without good cause to apply for available, suitable work when so directed by the unemployment office (RCW 50.20.080), and (2) not being available for work (RCW 50.20.010(3)). This decision was affirmed after hearing by the acting commissioner of the department and by the Superior Court for Kitsap County.

Appellant's brief constitutes a general challenge to virtually all findings and conclusions made at the administrative level, as well as those entered by the trial court. Because of the nature of this challenge, it is necessary for us to consider the scope of judicial review of an administrative ruling of this kind, as well as the facts which were presented to the hearing examiner in support of the decision to deny appellant unemployment benefits.

## SCOPE OF JUDICIAL REVIEW

RCW 50.32.120 provides that judicial review of a decision of the commissioner may be had only in accordance

with the procedural requirements of RCW 34.04.130, the administrative procedures act. Where findings of the administrative decision are challenged, RCW 34.04.130(6)(e) and (f) provide the "clearly erroneous in view of the entire record" and the "arbitrary or capricious" standards of review. *Macomber v. Department of Employment Security*, 87 Wn.2d 487, 554 P.2d 340 (1976).

When applying those standards, the trial court and this court review the administrative decision in an appellate capacity. *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 518 P.2d 1237 (1974). The court's jurisdiction is further limited by RCW 50.32.150 where the decision of the commissioner is declared to be prima facie correct with the burden of proof placed upon the party attacking the decision.

■ Under the "clearly erroneous" test, the courts may not reverse the administrative ruling simply by weighing the evidence differently than the commissioner or disagreeing with his conclusions. Upon review of the entire record the court must be left with the definite and firm conviction that a mistake has been made. We may not substitute our judgment for that of the administrative tribunal, but must give deference to its expertise. *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n, supra; Ancheta v. Daly*, 77 Wn.2d 255, 461 P.2d 531 (1969).

■ Under the stricter "arbitrary and capricious" test, the courts may reverse administrative rulings that are " 'willful and unreasoning . . . in disregard of facts and circumstances.' " *Stempel v. Department of Water Resources*, 82 Wn.2d 109, 114, 508 P.2d 166 (1973).

### EVIDENCE BEFORE THE COMMISSIONER

With these standards of review in mind, we consider the facts presented to the hearing examiner. In the late afternoon of May 31, 1973, Eggert received a telephone call from an employee of the Bremerton office of the Employment Security Department, informing him of a job opening as a machinist at the K-2 manufacturing plant on Vashon Island. Eggert informed the caller that he was not interested

in applying for the job because of the inconvenience and expense of commuting from his home in Port Orchard. During this brief telephone call there was no discussion of any of the particulars of this job.

At the hearing, Eggert claimed that he had not considered the phone call a referral and had given his response because of a job possibility he was pursuing in the Port Orchard area which did not primarily involve machinist work. Furthermore, Eggert testified that he went to the K-2 plant on Vashon Island approximately a week later on his own initiative and after two visits was turned down.[1]

Despite these contentions, the record shows that in a claimant interview held on June 4, 1973, Eggert signed a statement to the effect that he refused "the job referral at the K-2 on Vashon Island because of [the] commuting distance."

The testimony also was sufficient to establish that Vashon Island was in Eggert's work area. Commuting one way involved approximately 12 miles of driving and a 10-minute ferry ride. The record was also sufficient to establish that Eggert had been properly instructed on the consequences of refusing a job referral, although he testified that he was unaware of the consequences of failing to respond to the telephone call.

RCW 50.20.080 provides in part that an individual is disqualified from unemployment benefits if the commissioner finds that he has failed without good cause to apply for available, suitable work when so directed by the unemployment office. While our review of the record suggests the possibility of a contrary finding had the examiner believed Eggert's version, there is no basis for this court to have a definite or firm conviction that a mistake was made, nor that the action of the commissioner was willful and unreasoning action in disregard of the facts and circumstances.

---

[1]It is clear that Eggert did not seek the job as a referral from the Employment Security Department, but as an attempt to remove the disqualification from receiving benefits which his refusal had precipitated.

In response to Eggert's contention that he was unaware of the consequences of refusing a work referral directive and that the department had not informed him of the consequences, the trial court answered as follows in a memorandum opinion:

> Petitioner was given a Form 8139, according to the claim record card; it contained the advice that he would be disqualified for benefits if he failed without good cause either to apply for available suitable work or to accept suitable work when offered. He answered the question as to whether he had received such a form as follows: "I can't say for sure . . . I haven't never seen one of these before . . . I never got one of these . . . I haven't run across it. I got everything else. That's all I can say. It just didn't come to my attention. I know everything else I had . . ." Apparently the fact finder, viewing this testimony as well as Mrs. Pidduck's [an employee of the department] and the exhibit on page 40 of the record which indicates that petitioner was given Form 8139 on May 25, 1973, concluded he had been properly informed. This Court cannot say the Commissioner erred.

We adopt this reasoning and add the additional reason given by the trial court that RCW 50.20.080 provides essentially the same information as Form 8139. Eggert had statutory notice of the consequences of his refusal of a referral.

The commissioner's ruling for a portion of the period involved was based upon RCW 50.20.010(3), which requires that an individual make himself available for work by actively seeking work. The record shows that in some 7 weeks Eggert contacted four employers who regularly employed machinists, and several employers whose work was not directly related to his occupation. The examiner found that Eggert "placed more emphasis on job contacts not related to his primary occupation, in the immediate vicinity of his home, than he has on job contacts with employers who employ machinists regularly." In our opinion, this finding, which is within the special expertise of the commissioner, has support in the record and justified a conclusion that Eggert was not actively seeking work, as mandated by

RCW 50.20.010 (3). At least, we are not firmly convinced that a mistake was made or that the ruling disregards the facts and circumstances. By not looking for a job for which he was qualified, Eggert reduced his chances of finding work. *See Jacobs v. Office of Unemployment Compensation & Placement*, 27 Wn.2d 641, 179 P.2d 707 (1947).

 Eggert also contends there was an absence of procedural due process at the hearing. Our review of the record persuades us this argument has no merit. Eggert received adequate notice of the specific grounds to be covered in the hearing; the hearing was held before an appeal examiner who allowed him to testify at length and to cross-examine the department's only witness. Eggert was given the opportunity to retain counsel, but chose not to do so. Formal written findings of fact and conclusions of law were filed. There is no evidence that the examiner participated in the investigation or was otherwise partial. These facts satisfy procedural due process. *See Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970).

We do find it necessary to remand this case to the Superior Court for a determination of reasonable attorney's fees, pursuant to RCW 50.32.160. We fix such fees on appeal at $750. We are not authorized, as requested by Eggert, to order any of these attorney's fees paid out of the unemployment compensation administration's fund, since the commissioner's ruling has not been reversed or modified. RCW 50.32.160.

Affirmed as modified.

PETRIE, C.J., and REED, J., concur.