MIKOLAICZIAK v EMPLOYMENT SECURITY COMMISSION

1. UNEMPLOYMENT COMPENSATION—CORPORATE OFFICERS—NONPAID OFFICERS.

   Unemployment compensation claimants' being year-around corporate officials of a golf club did not bar them from benefits for the two months the golf course was closed because of seasonal weather conditions where the claimants receive absolutely no remuneration or compensation for serving as corporate officers and, therefore, were not employed within the meaning of the Employment Security Act (MCLA 421.42[1]).

2. UNEMPLOYMENT COMPENSATION—ELIGIBILITY FOR BENEFITS—BURDEN OF PROOF.

   An unemployment compensation claimant usually has the burden of proving his eligibility to receive benefits under the Employment Security Act (MCLA 421.1 *et seq.*).

3. UNEMPLOYMENT COMPENSATION—ELIGIBILITY FOR BENEFITS—SALARY.

   Claimants were entitled to unemployment benefits for the two months their employer, a golf club, closed its golf course due to seasonal weather conditions, even though the claimants referred to the wages they received as a "yearly wage", where the claimants were paid for performing managerial duties and manual labor on a weekly basis during the months that the golf course was open to the public and the claimants neither performed such duties and labor nor received any pay during the two-month closed period because the claimant's salaries were clearly based on only the weeks they worked (MCLA 421.48).

4. UNEMPLOYMENT COMPENSATION—AVAILABILITY FOR WORK.

   Claimants were "available" for work within the meaning of the Employment Security Act during the two-month period their

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds, § 37.
[2, 4, 5] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds, § 34 *et seq.*

employer, a golf club, was closed due to seasonal weather conditions, where each claimant registered for work and thereafter continued to report at an employment office, each claimant was able and available to perform full-time work of a character which he was qualified to perform, and each claimant sought, but was unable to obtain such full-time employment; the claimants did not act in bad faith by possibly limiting their availability for work by stressing their intention to return to work with the golf club when the weather permitted its reopening (MCLA 421.28[1] [a] and [c]).

5. Unemployment Compensation—Availability for Work—Full-Time Work.

The Employment Security Act does not require an unemployed individual to be available for and seek "permanent" full-time work, but only requires him to be available and seek full-time work (MCLA 421.28).

Appeal from Saginaw, Fred J. Borchard, J. Submitted Division 3 January 4, 1972, at Grand Rapids. (Docket No. 10395.) Decided April 25, 1972.

Claims by Leo J. Mikolaicziak, John Sieggreen, Jr., and Richard G. Maurer for unemployment compensation against Twin Oaks Golf Club, Inc. Benefits denied by the Michigan Employment Security Commission. Plaintiffs appealed to circuit court. Affirmed. Plaintiffs appeal. Reversed.

*Henry P. McCartney* and *Maurice Black,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Felix E. League,* Assistant Attorney General, for defendant Employment Security Commission.

Before: Fitzgerald, P. J., and R. B. Burns and Targonski,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

TARGONSKI, J. The claimants formed a Michigan corporation known as the Twin Oaks Golf Club, Inc. Each of the three claimants owns 150 shares of the 450 shares of stock which the corporation has issued. Claimant Richard G. Maurer was elected president of this corporation, claimant John Sieggreen, Jr., was elected treasurer, and claimant Leo J. Mikolaicziak was elected secretary. The claimants receive no remuneration from the corporation for serving as corporate officers. Each year, from April 1 to the latter part of November, the claimants' golf course is open to the playing public. During this period, in addition to serving as officers of the corporation, the claimants perform managerial duties and manual labor, each acting as manager on a given day and then performing services as a regular employee on the two successive days following the day on which he functions as manager, for which they are compensated by the corporation. Furthermore, the claimants also perform preparatory services from February 1 to April 1 in anticipation of the course opening. During these two months, February and March, the claimants receive remuneration only if there is a surplus in the corporate treasury.[1]

When the golf course was closed to the public in November of 1967, the claimants filed for unemployment benefits and received them during January and part of February, 1968. Again, when the course was closed on November 23, 1968, each claimant filed an additional claim for benefits.[2] After granting benefits, on January 22, 1969, the

[1] Out of the four years that the golf course has been in operation, the year 1969 was the first in which the claimants received remuneration for services rendered between February 1 and April 1. They each received $300 on February 9, 1969.

[2] The claimants sought benefits from November 24, 1968, to February 1, 1969, at which time they returned to their work at the golf course.

Michigan Employment Security Commission issued three separate redeterminations holding that the claimants were not eligible for unemployment benefits under subsections 28 (1) (a) and (c) of the Michigan Employment Security Act[3] and, therefore, the claimants: (1) were not entitled to the benefits which they had received, and (2) must make restitution of said amounts to the commission pursuant to section 62 (a) of the act.[4]

On January 24, 1969, the claimants filed an appeal from the commission's redeterminations and on March 4, 1969, a hearing was held before a referee. On March 12, 1969, the referee affirmed the commission's redeterminations on the grounds: (1) that the claimant's efforts in seeking employment during December, 1968 and January, 1969 did not constitute such good faith compliance with the requirements of subsections 28 (1) (a) and (c) of the Michigan Employment Security Act,[5] as to render them eligible for unemployment benefits; and (2) that the claimants were paid "annual salaries" and were not "unemployed" individuals within the meaning of section 48 of the act[6] during the period from November 24, 1968, to February 1, 1969.

On March 20, 1969, the claimants filed an appeal from the referee's decision. On June 25, 1969, a hearing was held before the Michigan Employment Security Appeal Board which affirmed the referee's decision with modifications on August 8, 1969. Subsequently, the claimants appealed to the Saginaw County Circuit Court which affirmed the decision of the Michigan Employment Security

[3] MCLA 421.28 (1) (a) and (c); MSA 17.530 (1) (a) and (c).

[4] MCLA 421.62; MSA 17.566.

[5] MCLA 421.28 (1) (a) and (c); MSA 17.530 (1) (a) and (c).

[6] MCLA 421.48; MSA 17.552.

Appeal Board on September 17, 1970. The claimants now appeal from that decision raising two issues for our consideration.

I. *Are individuals who receive no remuneration for serving as the officers of a corporation, but who receive remuneration for rendering managerial duties and manual labor for the corporation "unemployed" within the meaning of § 48 of the Michigan Employment Security Act,[7] during a two-month period when they cannot perform such services because of seasonal weather conditions?*

The claimants argue that under the circumstances in this case they were "unemployed" for two months[8] and thus are entitled to unemployment benefits. The Michigan Employment Security Commission refutes this claim though, contending that: the claimants were compensated by an annual salary and they were officers of the corporation performing services throughout the year, thereby precluding them from being classified as "unemployed" at any time of the year. Our analysis follows.

A review of the evidence presented before the referee in this case is appropriate. The evidence clearly shows: that the claimants received no compensation or remuneration for serving as the officers of the Twin Oaks Golf Club; that in 1968 the claimants received $8,900 remuneration for performing managerial duties and manual labor for the corporation; that this remuneration was paid to the claimants on a weekly basis from April 1, 1968, to November 23, 1968; that between November 23, 1968, and February 1, 1969, the claimants

---

[7] *Id.*

[8] This argument is based upon the months of December, 1968 and January, 1969 and including part of the last week of November, 1968.

performed absolutely no services or work for the corporation; that between November 23, 1968, and February 1, 1969, the claimants received absolutely no remuneration; that from November 23, 1968, to February 1, 1969, the claimants neither engaged in any work for nor received any compensation from any other employer; that the claimants received absolutely no income from any source during the months of December, 1968 and January, 1969; and that the Twin Oaks Golf Club was closed during the months of December, 1968 and January, 1969 because of seasonal weather conditions.

First, we find it necessary to determine whether the fact that the claimants were year-round officers of the corporation precludes them from receiving unemployment benefits. Section 42 (1) of the Michigan Employment Security Act[9] provides, as follows:

"Subject to the other provisions of this section "employment" means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied."

Since the claimants received absolutely no remuneration or compensation for serving as the corporate officers of the Twin Oaks Golf Club, they were not "employed" in such capacities within the meaning of § 42 (1) of the Michigan Employment Security Act. See *Great Lakes Steel Corp v Employment Security Commission,* 381 Mich 249 (1968). Therefore, we find it irrelevant to the resolution of this unemployment benefit claim whether the claimants continued to serve as corporate officers during the two-month period when the golf

[9] MCLA 421.42 (1); MSA 17.545 (1).

course was closed because of seasonal weather conditions.

However, since the claimants did receive remuneration for performing managerial duties and manual labor, they were "employed" in such capacities within the meaning of § 42 (1). Further, the fact that they were officers in the corporation does not of itself preclude such persons from being employees within the meaning of the act. Therefore, since the claimants did not perform such managerial duties and manual labor of the corporation during the two-month period, the solution as to whether the claimants were "unemployed" and qualified for benefits depends upon whether the remuneration which they received for performing such duties and labor was intended to compensate them for a 12-month period (an annual salary) or whether such remuneration was intended to compensate them only for the weeks (April through November) during which they actually performed such duties and labor. See § 48 of the act.[10]

We are cognizant that a claimant usually has the burden of proving his eligibility to receive benefits under the act. *Cassar v Employment Security Commission,* 343 Mich 380 (1955). Furthermore, we are aware that the decisions below, in the instant case, have held that the claimants have not met this burden, finding that the claimants did receive an "annual" salary, consequently making them ineligible for benefits. We further realize that we are bound by the legislative mandate contained in § 38 of the act[11] to affirm the finding of fact if such finding of fact is supported by competent, material, and substantial evidence

[10] MCLA 421.48; MSA 17.552.

[11] MCLA 421.38; MSA 17.540.

on the whole record. *Vickers v Employment Security Commission,* 30 Mich App 530 (1971); *Jozwik v Employment Security Commission,* 30 Mich App 506 (1971); *Losada v Chrysler Corp,* 24 Mich App 656 (1970). But, on the other hand, we are not bound to affirm when the finding of fact is not supported by competent, material, and substantial evidence on the whole record.

With the aforementioned in mind, we turn to the hearing which was held before the referee, at which claimant Richard G. Maurer testified, in pertinent part, as follows:

*"Q.* Who determines your, your wages there for the work that you perform [managerial duties and manual labor]?

*"A.* The three of us combined.

*"Q.* The Board of Directors?

*"A.* The Board of Directors.

*"Q.* Now how much of the stock in the corporation do you own?

*"A.* 150 shares.

*"Q.* And how many shares are there altogether? I mean issued shares, that is.

*"A.* 450.

\*   \*   \*

*"Q.* All right. And what wages were you paid by the corporation for the year 1968?

*"A.* Total?

*"Q.* Yes.

*"A.* Eighty——

*"Claimant Mikolaicziak:* Eighty-nine hundred.

*"A.* Hum?

*"Claimant Mikolaicziak:* Eighty-nine hundred.

*"Referee:* Well now, gentlemen, you can't assist each other. If you don't know just say so and when I get to one of the other—

*"Claimant Mikolaicziak:* All right.

*"Referee:* —gentlemen, perhaps they can say.

"*Q.* That was your yearly wage?

"*A.* Mmm-hmm.

"*Q.* Now, how is that paid to you? The eighty-nine hundred dollars.

"*A.* Weekly.

"*Q.* And it's paid to you weekly throughout the year or just weekly during the operations— * * *

"*A.* During the operations [of the golf course].

"*Q.* And when we're talking about the op— the seasonal operation of the course, what period of time are we talking about, Mr. Maurer?

\* \* \*

"*A.* From April 1st until November the 23rd.

"*Q.* Is this the period within which time people play golf on your golf course?

"*A.* Right.

"*Q.* Now in the discharge of your working duties, you perform services for the corporation before April the 1st?

"*A.* Mmm-hmm.

"*Q.* Before people start playing?

"*A.* Yes, sir.

"*Q.* And when does that start?

\* \* \*

"*A.* February 1st.

"*Q.* And do you get paid weekly from February the 1st?

"*A.* No.

"*Q.* You only get paid when the course is open to the playing customers?

"*A.* When we start operating."

Claimant, John Sieggreen, Jr., then testified, in pertinent part, as follows:

"*Q.* And you own a hundred and fifty shares of the stock in the corporation?

"*A.* Yes.

"*Q.* And what were your wages during 1968?

"*A.* Eighty-nine [hundred]."

"*Q.* And were these wages paid to you during the period from April the 1st, 1968 through November the 23rd, 1968?

"*A.* Yes.

"*Q.* * * * Did you also go back to work for the golf course February the 1st, 1969?

"*A.* Yes.

* * *

"*Q.* Now, is your work substantially the same for the golf course as Mr. Maurer's was? Do you manage every third day and do the other work that he's testified concerning on the two in-between days?

"*A.* Yes, it is.

"*Q.* So your work is identical with Mr. Maurer's?

"*A.* Yes.

"*Q.* And your pay is the same?

"*A.* Yes."

Claimant, Leo J. Mikolaicziak, testified, in pertinent part, as follows:

"*Q.* And your earnings, I assume, are the same as the other two gentlemen?

"*A.* Yes.

"*Q.* Eighty-nine hundred dollars a year?

"*A.* That's right.

* * *

"*Q.* And you are the third man in this alternating every third day managing the course and the—between two days working on the course?

"*A.* Yes.

* * *

"*Q.* And you have a hundred and fifty shares in the corporation?

"*A.* Yes."

Although the above-quoted testimony shows that the claimants referred to the $8,900 they received, as a "yearly wage", it is unequivocal that such remuneration was paid to them on a "weekly" basis during the months that the golf course was open to the public. It is apparent that such remu-

neration was not intended to compensate the claimants for a 12-month period. In fact, since the evidence presented at the hearing clearly shows: that the claimants received such remuneration for performing managerial duties and manual labor; that such remuneration was paid to the claimants on a weekly basis, but only during those months that they actually performed such duties and labor; and that the claimants neither performed such duties and labor nor received such remuneration during the two-month period when the golf course was closed because of seasonal weather conditions, we find that the $8,900 remuneration was compensation to the claimants only for those weeks during which they actually performed managerial duties and manual labor for the Twin Oaks Golf Club. Any prior determination otherwise is not supported by competent, material and substantial evidence.

Therefore, during the two months in question, we hold that the claimants were "unemployed" within the meaning of section 48 of the Michigan Employment Security Act, which provides, in pertinent part, as follows:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate."

II. *During the two-month period within which the claimants could not render either managerial duties or manual labor for the Twin Oaks Golf Club because of seasonal weather conditions, did they so restrict their availability for work under subsections 28(1)(a) and (c) of the Michi-*

*gan Employment Security Act*[12] *as to render them ineligible?*

The claimants further argue that they satisfied and fulfilled the statutory requirements for benefit eligibility. The Michigan Employment Security Commission contends otherwise. The commission argues that the claimants lacked good faith by limiting their availability for work, by stressing their intention to return to work with the golf course in February when ostensibly applying for work so as to preclude their becoming employed; in other words, so conducting themselves as to reduce the probability of their obtaining employment to a virtual impossibility while, at the same time, attempting to maintain, in good faith, that they were available for work. We disagree with the commission.

Subsection 28 (1) (a) of the Michigan Employment Security Act provides, in pertinent part:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that: he has registered for work at and thereafter has continued to report at an employment office in accordance with such regulations as the commission may prescribe and is seeking work."

Subsection 28 (1) (c) of the act provides, in pertinent part:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that: he is able and available to perform full-time work of a character which he is qualified to perform by past experience or training, and of a character generally similar to work for which he has previously received wages, and he is available for

---

[12] MCLA 421.28 (1) (a) and (c); MSA 17.530 (1) (a) and (c).

such work, full-time, either at a locality at which he earned wages for insured work during his base period or at a locality where it is found by the commission that such work is available."

Upon inspection of the evidence presented at the hearing before the referee, we find by competent, material and substantial evidence that each of the claimants was "available" for work within the meaning of subsections 28 (1) (a) and (c) of the act, during the two-month period when the golf course was closed on account of seasonal weather conditions. Each claimant registered for work and thereafter continued to report at an employment office; each was able and available to perform full-time work of a character which he was qualified to perform; and each sought, but was unable to obtain such full-time employment. Therefore, the claimants did meet the eligibility requirements of subsections 28 (1) (a) and (c) of the act and were entitled to receive benefits for the two months.

One further point merits comment. Although the commission contends that the claimants were not "available" for full-time work because they informed potential employers that they intended to return to work at the golf course in February, the Michigan Employment Security Act does not require an unemployed individual to be available for and seek "permanent" full-time work, but rather full-time work.[13]

Reversed.

All concurred.

---

[13] See MCLA 421.28; MSA 17.530.