[Nos. 4359–II; 4360–II.   Division Two.   May 15, 1981.]

SHIZUKO ARIMA, ET AL, *Appellants,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

VIRGINIA EHRESMAN, *Appellant,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

*Clifford F. Cordes, Jr.,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Matthew J. Coyle, Assistant,* for respondent.

PETRIE, J.—Three secretaries, Shizuko Arima, Mary Umphries, and Virginia Ehresman, all employed for many years by Green River Community College for a 9–month instructional year (from mid–September to mid–June) appeal from a judgment affirming a decision of the Commissioner of Employment Security which had denied their applications for unemployment compensation for the weeks ending June 25 through August 13, 1977. We affirm.

The facts in each case as found by the appeal examiner have not been challenged either in the appeal to the commissioner, the appeal to superior court, or the appeal to this court. Though the facts are slightly different in each case, the essential facts are the same as to each applicant. We recite, for purposes of analysis of the appropriate law, only the facts as found in Ms. Arima's case.

> 1. Claimant has been employed as a secretary (III) by the Green River Community College since September, 1968. She was a nine–month employee of that college and was laid off from that employment at the conclusion of the spring quarter of the 1976–1977 academic year on June 17, 1977, for the summer. She was to and did return to work for the college on September 14, 1977 when the fall term began for the 1977–1978 academic year.

2. The college did have positions available for secretaries and these were year–round positions. These positions were made known to the claimant and others by the posting and distribution of announcements during the 1976–1977 school year. Claimant did not seek any of these year–round positions because, in her words, "she already had a job." The claimant did, however, seek temporary summer employment at the college and began making inquiries toward this objective in April, 1977. The permanent positions that were available were equivilant [*sic*] to claimant's Secretary III position, would have paid an equivilant [*sic*] monthly salary and the claimant would have been given preference over other candidates who were not in the employ of the college.

One of the governing statutes is RCW 50.20.010, which provides in part:

An *unemployed* individual shall be eligible to receive waiting period credits or benefits with respect to any week in his eligibility period only if the commissioner finds that . . .

. . .

(3) he is able to work, and is *available for work* in any trade, occupation, profession, or business for which he is reasonably fitted. To be available for work an individual must be ready, able, and willing, immediately to accept any suitable work which may be offered to him and must be actively seeking work pursuant to customary trade practices and through other methods when so directed by the commissioner or his agents; and

(4) he has been *unemployed* for a waiting period of one week.

(Italics ours.)

The examiner, the commissioner, and the trial court applied the facts to this statute and concluded that Ms. Arima was ineligible for benefits for the summer of 1977 because she knew of 12–month position vacancies which she was clearly capable of filling but failed to apply for them. Ms. Arima's contention is simply that she knew of these vacancies only at times when she was not *un*employed. Indeed, when asked why she did not apply for one of the 12–month positions, she replied:

Well, because I already had a job at that time and I didn't need it until summer.

and

Well, if you're perfectly happy with the job that you have and then you're looking for something else for the summer, there is no reason to quit a job that you like and go into something you don't like.

Ms. Arima directs our attention to RCW 50.04.310, which provides:

An individual shall be deemed to be "unemployed" in any week during which he performs no services and with respect to which no remuneration is payable to him, or in any week of less than full time work, if the remuneration payable to him with respect to such week is less than one and one–third times his weekly benefit amount plus five dollars. The commissioner shall prescribe regulations applicable to unemployed individuals making such distinctions in the procedures as to such types of unemployment as the commissioner deems necessary.

The examiner "concluded", and the commissioner adopted the conclusion, that during the time Ms. Arima and the other two claimants were employed in a 9–month capacity they "imposed a material restriction upon [their] availability for full–time, year–round work by not seeking such work." The claimants appear to challenge that statement as a fact not properly inferred from the record; but, more seriously, they contend they were under no duty to make themselves available for other year–round work while they were actually (and happily) employed on a 9–month basis. Sufficient it is, they assert, that they make themselves available for work *after* they become unemployed. After considering the applicable statutes, the commissioner disagreed with that legal conclusion.

We are thus confronted with resolving a situation which has been described as a mixed question of law and fact. Under that state of the record and on the basis of prevailing case law, we are required to review the record in order to ascertain whether or not the commissioner made an error of law. *Daily Herald Co. v. Department of Employment Security,* 91 Wn.2d 559, 588 P.2d 1157 (1979); *Brandley v.*

*Department of Employment Security,* 23 Wn. App. 339, 595 P.2d 565 (1979). We prefer, however, to divide our functions (1) by resolving the propriety of a finding of an "administrative fact" and (2) by resolving a pure question of law.

We consider first the "administrative fact," *i.e.,* the administrative agency's application of other facts[1] to a statutory or legal term or standard as to whose meaning, at least in the particular case, there is little dispute and which is established by the agency's enabling legislation. *NLRB v. Marcus Trucking Co.,* 286 F.2d 583 (2d Cir. 1961) ("ratification" of a labor contract). *See Aarhaus v. Department of Employment Security,* 23 Wn. App. 134, 594 P.2d 1370 (1979) (nonstriking employee's "participation" in a strike); *Convoy Co. v. State Utils. & Transp. Comm'n,* 3 Wn. App. 1005, 479 P.2d 151 (1970) (whether extension of a carrier's permit is required by the present and future "public convenience and necessity"). In the case at bench, that statutory term is "availability for work" and the administrative fact is whether Ms. Arima's actions imposed a material restriction on that availability.

Admittedly, this definition of an "administrative fact" overlaps, at least partially, into the "conclusion of law" decision–making process. Nevertheless, we deem it appropriate to practice at the state level, as was recognized at the federal level 20 years ago, "some judicial deference to administrative expertise in the interpretation of legal language contained in the very act which the agency administers . . ." *NLRB v. Marcus Trucking Co.,* 286 F.2d at 591. We will review as a question of fact, therefore, the propri-

---

[1]A "fact" other than an "administrative fact" may be categorized either as (1) a "raw fact", when the existence of a past, present, or future phenomenon, as an event, a relationship, a condition, or a state of mind, can be determined, even from disputed evidence, without resort to inferences of any kind, or (2) an "inferred fact", when the existence of a particular phenomenon is determined, by application of a rule of "common experience", as a probable or likely result logically and within the range of reason following upon an undisputed or an already found raw fact without application of a rule of law. *See* Jaffe, *Judicial Review: Question of Law,* 69 Harv. L. Rev. 239 (1955).

ety of the agency's determination that Ms. Arima, during her employment "imposed a material restriction upon her availability for full time, year–round work by not seeking such work."

■ We test the propriety of the agency's finding of fact—regardless of what name it bears—by the "clearly erroneous" standard contained in RCW 34.04.130(6)(e) and as refined by *Ancheta v. Daly*, 77 Wn.2d 255, 461 P.2d 531 (1969). Measured by that standard, we have no difficulty declaring that we are not left with the definite and firm conviction that a mistake has been committed by the agency's determination that when these claimants were employed they imposed a material restriction on their availability for year–round work by failing to seek such employment which was then available to them. Clearly, if these claimants had voluntarily imposed a material restriction on their availability for work while they were unemployed, they would be ineligible for unemployment compensation while that restriction remained. *Jacobs v. Office of Unemployment Compensation & Placement*, 27 Wn.2d 641, 179 P.2d 707 (1947).

■ We move then to the pure question of law, *i.e.*, the agency's determination expressed in legal overtones. In the case at bench, the agency concluded that Ms. Arima's self–imposed restrictions, admittedly made while she was still employed, nevertheless rendered her ineligible for benefits under an appropriate, if seemingly conflicting, statute. More often, the question of law involves the administrative agency's attempt to define a nondefined statutory term for which there are sharply divided opinions. *See Dillard v. Public Employees' Retirement Sys.*, 93 Wn.2d 677, 611 P.2d 1231 (1980) (meaning of the undefined term "accident" under a disability retirement statute). At this point, then, we focus on whether or not the agency committed an "error of law." *Dillard v. Public Employees' Retirement Sys., supra.*

Ms. Arima and the other secretaries contend that during their regular 9–month employment they were under no

obligation to make themselves available for year–round employment and during their temporary summer unemployment they need only make themselves available for summer employment. The commissioner contends, as a matter of law, that once the claimants voluntarily impose a material restriction on their availability for work they are no longer unequivocally attached to the labor market and, thus, are ineligible for benefits.

Resolution of this conflict is not, as the claimants suggest, dependent upon what rights and responsibilities they had during their 9–month employment period. Rather, the question of law in this case is decided by considering the nature and consequences of the agency's "administrative fact."

■■ First, there is no indication in the record that Ms. Arima's self–imposed restriction dissolved when she was discharged from her 9–month position on June 17, 1977. Indeed, the record affirmatively demonstrates that whatever limitations Ms. Arima imposed upon her availability for employment while she was employed continued uninterruptedly during the summer of 1977. True, during the summer Ms. Arima was not offered, nor was she made aware of, a full–time, year–round position, but the conclusion is inescapable that had she then known of such employment she would at least have advised her prospective employer that she was only interested in applying for such a position on a temporary basis through the summer lest she be prevented from returning to her regular, and intended, 9–month employment in September.

Some few courts have taken the view that Ms. Arima's self–imposed work availability would not make her ineligible for unemployment benefits. *Rehart v. Department of Employment*, 98 Idaho 549, 568 P.2d 522 (1977); *Mikolaicziak v. Michigan Employment Security Comm'n*, 40 Mich. App. 61, 198 N.W.2d 442 (1972). So far as we can ascertain, however, the vast majority of jurisdictions would declare that Ms. Arima's self–imposed limitation would make her unavailable for suitable work and, thus, ineligible for bene-

fits. *Swaby v. California Unemployment Ins. Appeals Bd.,* 85 Cal. App. 3d 264, 149 Cal. Rptr. 336 (1978); *Howell v. Administrator,* 174 Conn. 529, 391 A.2d 165 (1978); *Florida Indus. Comm'n v. Ciarlante,* 84 So. 2d 1 (Fla. 1955); *Shaughnessy v. Board of Review,* 160 N.J. Super. 96, 388 A.2d 1307 (1978); *Davis v. Unemployment Compensation Bd. of Review,* 39 Pa. Commw. Ct. 146, 394 A.2d 1320 (1978).

We choose to follow what appears to be the majority rule. Unemployment compensation benefits are usually denied claimants such as Ms. Arima on the basis that her self-imposed limitation constitutes a voluntary withdrawal from the employment market, and that granting such benefits would be inconsistent with the fundamental concept of a program which is designed to act as a buffer or hedge against the ravages of sudden and unexpected loss of one's livelihood. We hold, therefore, that because Ms. Arima was (and the other claimants were) not exposed unequivocally to the labor market during the summer of 1977, she was (they were) ineligible for unemployment compensation benefits.

Judgment affirmed.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied June 18, 1981.

Review denied by Supreme Court September 25, 1981.