IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AYAN ALI, | ) | |
| | ) | No. 76655-4-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON | ) | |
| DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: August 6, 2018 |
| | ) | |

BECKER, J. — This is an appeal from a denial of unemployment compensation. The appellant is a former building cleaner who cannot accept night work because she must be home with her children. We find no basis for overturning the decision that appellant's limited availability renders her ineligible for benefits.

Ayan Ali is a Somali immigrant and single mother to four children, all under age 10. After losing her job as a building cleaner, Ali applied for unemployment compensation in February 2016. She stated in her application that she could not work between 10:30 p.m. and 10:30 a.m.

To receive unemployment compensation, a person must be "available" for suitable positions, which generally means that the person must be available during all hours customarily worked in his or her industry. RCW 50.20.010(1)(c);

WAC 192-170-010(1). According to data relied on by the Employment Security Department, customary hours for building cleaners are "24/7."[1]

By decision dated March 26, 2016, the department disqualified Ali from receiving benefits based on the limitation she placed on the times within which she would be available.

Ali appealed. Her case was heard by an administrative judge on April 28, 2016. Ali was the only witness. She appeared by phone and gave testimony through an interpreter. She did not have a lawyer. The judge asked about Ali's job search. She said that she was looking for any positions she was qualified for. The judge asked whether Ali could work between 10 at night and 10 in the morning. She responded, "I cannot work from ten to ten, . . . because I have children, so I cannot work these hours."[2] The judge relied on her response in upholding the denial of benefits. Finding that Ali "works cleaning buildings" and that building cleaners "can be scheduled to work any shift day or night," the judge concluded, "Because the claimant was not available to work any shift, day or night, any day of the week, from the week beginning February 28, 2016, she is subject to a denial of benefits under [chapter 50.20 RCW] and related regulations from the week beginning February 28, 2016."[3]

Ali retained counsel and petitioned for review. The commissioner's review office affirmed the decision of the administrative judge on June 10, 2016. That decision was affirmed by the superior court. This appeal followed.

---

[1] Administrative Record at 31.
[2] Administrative Record at 18-19.
[3] Administrative Record at 33-34.

We review an agency decision from the same position as the superior court, applying standards from the Administrative Procedure Act, chapter 34.05 RCW, directly to the commissioner's order. RCW 50.32.120; Campbell v. Emp't Sec. Dep't, 180 Wn.2d 566, 571, 326 P.3d 713 (2014); Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). One basis for reversal is if the commissioner erroneously interpreted or applied the law. RCW 34.05.570(3)(d). We consider Ali's appeal under this standard. She does not assign error to any factual findings entered below. The sole issue presented is whether application of the law to the facts supports a determination that she is ineligible for benefits. We review this question de novo, but accord substantial weight to the agency's interpretation of a statute within its expertise. Brandley v. Emp't Sec. Dep't, 23 Wn. App. 339, 342, 595 P.2d 565 (1979); Verizon Nw, Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). Ali bears the burden of demonstrating error. RCW 34.05.570(1)(a).

Unemployment benefits are a finite resource. Caughey v. Emp't Sec. Dep't, 81 Wn.2d 597, 599, 503 P.2d 460 (1972). They are intended for those out of work "through no fault of their own" who are pursuing reemployment. RCW 50.01.010. "The chief purposes of unemployment compensation are to minimize the disruption caused by involuntary inability to obtain employment and to provide support for unemployed workers as they seek new jobs." Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 407-08, 858 P.2d 494 (1993).

Specific eligibility requirements are set forth in the Employment Security Act at RCW 50.20.010. The condition at issue here is that a claimant must be

"able to work" and "available for work in any trade, occupation, profession, or business for which he or she is reasonably fitted." RCW 50.20.010(1)(c). To be available, a person must be "actively seeking work" and "ready, able, and willing, immediately to accept any suitable work which may be offered to him or her." RCW 50.20.010(1)(c)(ii). The Washington Administrative Code further defines the availability requirement:

> (1) In general, the department will consider you available for work if you:
>
> (a) Are willing to work full-time, part-time, and accept temporary work during all of the usual hours and days of the week customary for your occupation.
>
> . . . .
>
> (b) Are capable of accepting and reporting for any suitable work within the labor market in which you are seeking work;
> (c) Do not impose conditions that substantially reduce or limit your opportunity to return to work at the earliest possible time;
> (d) Are available for work during the hours customary for your trade or occupation; and
> (e) Are physically present in your normal labor market area, unless you are actively seeking and willing to accept work outside your normal labor market.

WAC 192-170-010(1).

Ali contends that her willingness to accept shifts between 10 a.m. and 10 p.m. makes her compliant with these conditions. The department responds that availability during a 12-hour timeframe is inadequate; as a building cleaner, Ali must be available 24 hours per day. The department further contends that by limiting her hours of availability, Ali has imposed a substantial restriction on her ability to return to work at the earliest possible time.

The administrative code plainly requires availability during all customary hours, per WAC 192-170-010(1)(a) and (d). The provision prohibiting conditions

that "substantially reduce or limit" availability, WAC 192-170-010(1)(c), has likewise been interpreted by the department to require availability during all customary hours. In re Wolanski, No. 01-1997-01469, 1997 WL 33644587 (Wash. Emp't Sec. Dep't Comm'r Dec. 860, 2d Series *2 May 16, 1997). As applied here, these provisions require Ali to be available for work shifts beginning any time of day. She was willing to make herself available only for shifts that began no earlier than 10 a.m. and ended no later than 10 p.m.

Another legal obstacle for Ali is the leading case on this issue, Jacobs v. Office of Unemployment Compensation & Placement, 27 Wn.2d 641, 179 P.2d 707 (1947). The appellant was a married woman and mother of five. Jacobs, 27 Wn.2d at 642. She was denied unemployment compensation after losing her wartime job as a riveter. Jacobs, 27 Wn.2d at 642-43. The denial was based, in part, on the woman's unwillingness to accept night shifts due to her family obligations. Jacobs, 27 Wn.2d at 644, 648-49, 651. Our Supreme Court affirmed the agency's decision, reasoning that the woman was unavailable because she "restricted her work to daytime employment, regardless of whether or not available work required that she report for a night shift." Jacobs, 27 Wn.2d at 660. The court's survey of nationwide authority supported this result. Jacobs, 27 Wn.2d at 654-56. The court observed that if benefits were provided to claimants not making "an active and reasonable effort to secure suitable employment," "it is easy to see how the funds created by the unemployment compensation act would soon disappear, like chaff before the wind, leaving no

protection to those who are rightfully entitled thereto by reason of their enforced unemployment." Jacobs, 27 Wn.2d at 661.

This court followed Jacobs in Arima v. Emp't Sec. Dep't, 29 Wn. App. 344, 351, 628 P.2d 500, review denied, 96 Wn.2d 1003 (1981). The claimant's "self-imposed restrictions" on availability amounted to a "voluntary withdrawal from the employment market." Arima, 29 Wn. App. at 349, 351. The court determined that allowing benefits would be "inconsistent with the fundamental concept of a program which is designed to act as a buffer or hedge against the ravages of sudden and unexpected loss of one's livelihood." Arima, 29 Wn. App. at 351.

Ali points out distinctions between her case and Jacobs in an effort to show that it is not controlling authority. Ali is a single mother whose children are all young. The mother in Jacobs, by contrast, had a husband and an older child (age 18) who might have helped to care for the younger children at night. Ali is willing to work in the evening until 10 p.m., and she has her own car in which to travel to and from a job, whereas the mother in Jacobs had no car. Jacobs, 27 Wn.2d at 660. But Jacobs cannot be limited to its facts in the manner urged by Ali. The court's reasoning was broad: a worker's family responsibilities, or other personal circumstances, do not excuse significant limitations on availability.

Ali cites department decisions in which claimants were not disqualified from receiving benefits for expressing a preference to not work certain hours.[4]

---

[4] In re Lewis, No. 5-01454, 1975 WL 175259 (Wash. Emp't Sec. Dep't Comm'r Dec. No. 1233 Mar. 25, 1975); In re McKinney, No. 03-2011-33029, 2012 WL 8441411 (Wash. Emp't Sec. Comm'r Dec. 981, 2d Series Jan. 13, 2012).

But Ali did more than express a preference. She testified unequivocally that she cannot work between 10 p.m. and 10 a.m. She does not challenge the finding of the administrative judge, adopted by the commissioner, that she is unavailable during those hours.

Ali contends that by classifying her as a building cleaner, the commissioner erroneously failed to consider her experience as a caregiver and her willingness to work noncleaning jobs.

A claimant must be available for "suitable" work. RCW 50.20.010(1)(c)(ii); WAC 192-170-010(1)(b); see also RCW 50.20.010(1)(c) (claimant must be available to accept "work . . . for which he or she is reasonably fitted"). Suitable work is "employment in an occupation in keeping with the individual's prior work experience, education, or training and if the individual has no prior work experience, special education, or training for employment available in the general area, then employment which the individual would have the physical and mental ability to perform." RCW 50.20.100(1). Additionally, the commissioner may consider: the degree of risk involved to the individual's health, safety, and morals; the individual's physical fitness; the individual's length of unemployment and prospects for securing local work in the individual's customary occupation; the distance of the available work from the individual's residence; and "other factors as the commissioner may deem pertinent." RCW 50.20.100(1).

Under these provisions, particularly the catchall for "other factors as the commissioner may deem pertinent," a commissioner has discretion to consider a claimant's preferred hours. The commissioner also has discretion to consider

that parenting experience, like formal work experience, can build marketable skills relevant to evaluating the type of work a person is qualified to perform. The problem for Ali is that nothing in the statute *compelled* the commissioner to decide she was available for work despite the restriction she imposed on her hours. Ali did not suggest a particular type of work that would suit her schedule better than cleaning work. We cannot say the commissioner erred in focusing on her past experience as a building cleaner when deciding what type of work would be suitable for her.

Ali argues that our unemployment insurance scheme fails to account for the unique circumstances of single mothers, a group with a high rate of participation in the workforce. Ali notes that the influx of female laborers has not been matched by a significant reduction in their domestic responsibilities, citing Rebecca Smith et al., Nat'l Emp't Law Project, *Between a Rock and a Hard Place: Confronting the Failure of State Unemployment Insurance Systems to Serve Women and Working Families* 1 (July 2003), http://stage.nelp.org/content/uploads/2015/03/Between-a-Rock-and-a-Hard-Place-070103.pdf [https://perma.cc/SA23-BCLM]. As illustrated by Ali's case, unemployment laws can disfavor parents who have to juggle their responsibilities to their children with their need for employment outside the home.

These are serious policy concerns. But the statute as presently written does not require the department to consider a claimant's childcare obligations when making an eligibility determination. Courts are unsuited to the task of devising a systematic solution to the problem of how unemployed parents can be

encouraged to return to the workforce and can at the same time be assured of proper care and supervision for their children. We may not rewrite an unambiguous statute to suit our notions of what is good public policy, recognizing that "the drafting of a statute is a legislative, not a judicial, function." State v. Enloe, 47 Wn. App. 165, 170, 734 P.2d 520 (1987). Ali's argument is better addressed to the legislature. Indeed, our legislature considered proposed amendments to the Employment Security Act during a recent session. See H.B. 2987, 65th Leg., Reg. Sess. (Wash. 2018).

In summary, Ali has not shown error. The commissioner properly applied RCW 50.20.010 and WAC 192-170-010 in finding her ineligible for unemployment compensation.

Affirmed.

Becker, J.

WE CONCUR:

Mann, J.

Appelwick, C.J.